```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RATES TECHNOLOGY INC.,                  :
                                        :
                 Plaintiff,             :     10 Civ. 6482 (DLC)
                                        :
         -v-                            :     OPINION & ORDER
                                        :
SPEAKEASY, INC., BEST BUY CO., INC.,    :
SPEAKEASY BROADBAND SERVICES, LLC,      :
MEGAPATH INC., COVAD COMMUNICATIONS     :
CO., COVAD COMMUNICATIONS GROUP, INC.,  :
CCGI HOLDING CORP., and PLATINUM EQUITY :
LLC,                                    :
                                        :
                 Defendants.            :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
Amelia R.S.H. Lister-Sobotkin
David Lazer
Lazer, Aptheker, Rosella & Yedid, P.C.
225 Old Country Road
Melville, NY 11747

Jason M. Drangel
Robert L. Epstein
Epstein Drangel Bazerman & James LLP
60 East 42nd Street, Suite 820
New York, NY 10165

For Defendants Best Buy Co., Inc. and Speakeasy, Inc.:
David Leichtman
Avani Pankaj Bhatt
Robins, Kaplan, Miller & Ciresi, LLP (NYC)
601 Lexington Avenue, Suite 3400
New York, NY 10022

For Defendants Speakeasy Broadband Services, LLC, Megapath Inc.,
Covad Communications Co., Covad Communications Group, Inc., CCGI
Holding Corp. and Platinum Equity LLC:
Richard L. Mattiaccio

Steven Skulnik
Squire, Sanders & Dempsey
30 Rockefeller Plaza
New York, NY 10112

Christopher D. Mays
David S. Elkins
Squire, Sanders & Dempsey ( US) L.L.P.
600 Hansen Way
Palo Alto, CA 94304


DENISE COTE, District Judge:

Plaintiff Rates Technology, Inc. ("RTI") brings this action for breach of an agreement between RTI and defendant Speakeasy, Inc. ("Speakeasy") which provided that in the event Speakeasy challenged the validity of certain telecommunication patents held by RTI, Speakeasy would pay $12 million in liquidated damages to RTI.  Because this so-called "licensee estoppel" clause is invalid and unenforceable, the defendants' motions to dismiss are granted.


BACKGROUND

The first amended complaint (the "Complaint") asserts three causes of action for breach of contract at various points in time.  The Complaint principally alleges that the defendants breached an agreement between RTI and Speakeasy by either filing or assisting in the filing of an action in the Northern District of California which sought a declaratory judgment that the patents encompassed by the agreement are invalid.  The Complaint

seeks to collect liquidated damages of $12 million from the defendants as provided for in the agreement.

RTI, a Delaware company, retains ownership rights to many patents in the telecommunications field.  According to the Complaint, RTI is highly regarded "for its policy of settling patent infringement claims in accordance with a one-time payment tiered pricing structure based on the size of the accused infringer measured by its annual sales."

RTI owns the rights to the two telecommunications patents at issue here, United States Patent No. 5,425,085 (the "'085 Patent") and United States Patent No. 5,519,769 (the "'769 Patent").  Both patents cover inventions related to the automatic routing of telephone calls based on cost.

RTI became aware that Speakeasy was infringing on the '085 and '769 Patents in April of 2007.  On April 30, 2007, RTI and Speakeasy entered into an agreement (the "Agreement") whereby RTI promised not to sue Speakeasy for infringement of the '085 and '769 Patents in exchange for a one-time payment of $475,000.  The Agreement included a licensee estoppel clause providing that

> Speakeasy hereby warrants and represents to RTI that on and after the execution date of this Covenant Speakeasy will not anywhere in the world challenge, or assist any other individual or entity to challenge, the validity of any of the claims of the Patents or their respective foreign counterpart patent applications, except in defense to a Patent infringement lawsuit brought under the Patents against Speakeasy, its Systems, and except as otherwise

> provided by law.  In the event that the above
> representation is incorrect then Speakeasy agrees that
> it shall pay to RTI as liquidated damages the
> additional amount of Twelve Million U.S. ($12 Million)
> Dollars plus all legal expenses necessary to collect
> this added amount.

The Agreement defined "Speakeasy" to "mean Speakeasy, Inc. and Best Buy Co., Inc. and their current direct or indirect Affiliates" in anticipation of defendant Best Buy Co., Inc.'s ("Best Buy") acquisition of Speakeasy.

On June 10, 2010, Best Buy announced its intention to sell Speakeasy to defendant Covad Communications Group, Inc. ("Covad Communications Group").  Speakeasy then planned to merge with defendants MegaPath Inc. ("MegaPath") and Covad Communications Company, a wholly owned subsidiary of Covad Communications Group.  To effect the sale of Speakeasy and the merger of Speakeasy with MegaPath and Covad Communication Company, Best Buy transferred all of Speakeasy's assets to defendant Speakeasy Broadband Services, LLC ("Speakeasy Broadband").  Best Buy later sold Speakeasy Broadband to Covad Communications Group.

The Complaint alleges that as part of the due diligence conducted in preparation for the merger, Best Buy and Speakeasy provided information concerning the Agreement and the '769 and '085 Patents encompassed by the Agreement to Covad Communications Company.  In June of 2010, RTI became aware that the products and services of Covad Communications Company were

4

infringing on the '769 and '085 Patents and on June 25, RTI notified Covad Communications Company of this alleged infringement and offered to enter into an agreement with the company.  Covad Communications Company subsequently brought suit in the Northern District of California on July 23, 2010; it sought a declaratory judgment that the '085 and '769 Patents were invalid.

RTI filed its original complaint on August 31, 2010.  The original complaint named only Speakeasy and Best Buy as defendants.  RTI amended its complaint to add Speakeasy Broadband, Covad Communications Company, Covad Communications Group, and MegaPath as defendants on December 3.  Speakeasy and Best Buy filed a motion to dismiss on January 14, 2011; Speakeasy Broadband, Covad Communications Company, Covad Communications Group, and MegaPath filed a separate motion to dismiss on the same day.  The motions were fully submitted on March 4.

## DISCUSSION

The defendants have moved to dismiss on three principal grounds.  First, they assert that the licensee estoppel clause in the Agreement is invalid and unenforceable.  Second, Best Buy and Speakeasy assert that RTI's claim that they "assisted" in the filing of the declaratory judgment action in California

5

fails the plausibility standard under Twombly. Finally, the Covad entities, MegaPath, and Broadband allege that they are not bound by the Agreement and thus are not responsible for any breach. Because the licensee estoppel clause is invalid under governing Second Circuit case law, it is unnecessary to address the other defenses raised by the defendants.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). The court is "not bound to accept as true legal conclusions couched as factual allegations. Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 475-76 (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).

The contract doctrine of licensee estoppel provides that "when a licensee enters into an agreement to use the intellectual property of a licensor, the licensee effectively recognizes the validity of that property and is estopped from contesting its validity in future disputes." Idaho Potato Comm'n v. M & M Produce Farm & Sales, 335 F.3d 130, 135 (2d Cir. 2003). In Lear, Inc. v. Adkins, 395 U.S. 653 (1969), the Supreme Court held that the doctrine of licensee estoppel is

unenforceable in the context of challenges to the validity of patents:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain.  Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery.  If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification.  We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

Id. at 670-71.  The Second Circuit has interpreted Lear to require that courts "weigh the federal policy embodied in the law of intellectual property against even explicit contractual provisions and render unenforceable those provisions that would undermine the public interest."  Idaho Potato, 335 F.3d at 137.

While the Second Circuit has not squarely addressed the question of the enforceability of licensee estoppel clauses in settlement agreements such as the one at issue here, the Ninth Circuit has found such a clause to be unenforceable.  The Ninth Circuit reasoned that "the rationale of Lear requires us to hold that the covenant . . . in the settlement agreement . . . not to contest the validity of [the plaintiff's] patent, is void on its face and unenforceable."  Massillon-Cleveland-Akron Sign Co. v. Golden State Advertising Co., 444 F.2d 425, 427 (9th Cir. 1971).

7

Other courts have found that the public policy in favor of settlement agreements outweighs the public interest in contesting the validity of patents only where the settlement agreement was entered into after litigation challenging the validity of the patent was voluntarily dismissed and the parties had had an opportunity to conduct discovery on the merits.  See Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1370 (Fed. Cir. 2001).

The contract clause at issue here is unenforceable under the reasoning of Lear and its progeny.  The Agreement between RTI and Speakeasy purports to bind Speakeasy to the promise that "Speakeasy will not anywhere in the world challenge, or assist any other individual or entity to challenge, the validity of any of the claims of the Patents" covered by the Agreement.  This clause directly contravenes the public interest in litigating the validity of patents.  Further, the Agreement between RTI and Speakeasy was entered into prior to the commencement of any litigation.  Speakeasy and its affiliates had not engaged in litigation to contest the validity of the patents prior to signing the Agreement.  This is in direct contrast to the situation in Flex-Foot, where the court upheld the licensee estoppel provision on the ground that the parties had had ample opportunity to take discovery and had voluntarily dismissed the lawsuit challenging the validity of the patents prior to entering into the settlement agreement.

RTI's argument -- that the holding of Lear only applies where the agreement establishes a continuing obligation to make royalty payments -- is without merit.  RTI contends that the Agreement is not a license and does not require any payment of royalties for future use.  RTI argues that, as a result, the Lear policy is not offended by the Agreement's prohibition of any attack on the two patents.  It principally relies on two Second Circuit decisions to support its view that the strong policy in favor of the enforcement of settlement agreements should prevail here.

The two Second Circuit cases on which RTI relies are of little assistance to RTI.  Both enforced agreements settling patent infringement litigation, but in neither case did the agreement include a liquidated penalty for actions attacking the validity of a patent.  In International Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, (2d Cir. 1979), the Second Circuit observed that "enforcement of the settlement agreement does not estop [defendant] from challenging the validity of [plaintiff's] patent," which the defendant was already doing in a separately filed action.  Id. at 56-57.  The damages paid under the settlement agreement in Telemeter were damages for past infringement, and therefore constituted an enforceable obligation.  Id. at 57.

The decision in Warner-Jenkinson Co. v. Allied Chemical Corp., 597 F.2d 184 (2d Cir. 1977), similarly acknowledged the importance of the right to attack the validity of a patent despite the

existence of a settlement agreement.  In Warner-Jenkinson, the Second Circuit concluded that "a nonterminable licensing agreement does not estop licensees from litigating validity."  Id. at 185.  The licensing agreement, which had settled prior litigation between the parties, provided for a lump-sum payment for past infringement and a royalty for future sales.  Id.  The licensee thereafter brought suit seeking a declaration that the patent was invalid.  Id. at 186.  The Court of Appeals permitted the pending litigation to proceed without any requirement that the patent licensee "actually withhold royalty payments before he can challenge validity."  Id. at 187.  In so holding, the court expressed concern that licensees may not test the validity of patents if forced "to make the hard choice" of withholding payments and becoming liable for infringement.  Id. at 187.  While the court did observe in dicta that an explicit prohibition on licensee suits in a settlement agreement may be enforceable, id. at 188, it did not have occasion to describe the circumstances in which it would accept such a prohibition.  To the contrary, it stressed the strong public interest "in having invalid patents cleared away through litigation."  Id.

RTI emphasizes one additional circuit opinion.  It recites the Seventh Circuit's observation that, "[t]o allow a subversion of the deeply instilled policy of settlement of legitimate disputes by applying the federal patent policy as enunciated in Lear would

10

effectively strip good faith settlements of any meaning." Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc., 489 F.2d 974, 978 (7th Cir. 1973).  Ransburg, however, did little more than acknowledge the enforceability of a settlement agreement that required monthly installment payments for past infringement.  Id. at 976.  Indeed, the patent-holder did not seek to enforce the separate part of the agreement that set a license fee for future use.  Id.  Nor could it have, since the patent had been ruled invalid.  Id.  Therefore, the Seventh Circuit did not have occasion to address the enforceability of an agreement, like the one at issue here, that penalizes any effort to invalidate the patent.

Thus, RTI's argument that enforcement of the licensee estoppel clause is mandated by the Second Circuit's strong policy in favor of enforcing settlement agreements does not outweigh the specific concerns addressed in Lear and its Second Circuit progeny.  As explained above, the Second Circuit has made clear that the policy in favor of enforcing contracts must be weighed against the public interest in challenging the validity of patents.  Where, as here, an agreement purports to deprive a licensee of any opportunity to challenge validity, it directly contravenes "the important public interest in permitting full and free competition in the use of ideas." Lear, 395 U.S. at 670.

## CONCLUSION

The defendants' January 14, 2011 motions to dismiss are granted. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated:   New York, New York
         May 9, 2011

*[signature]*
DENISE COTE
United States District Judge